ODELL *versus* DANA.

The statute of limitations provides that, if there be two or more joint contract-ors, no one of them shall be chargeable by reason only of any acknowledg-ment or promise made by any other of them.

Though an action upon a note against the principal would be barred by the statute limitation; yet that limitation would be no bar to a suit against the principal for reimbursement, brought by the surety, who had paid the note before the limitation attached to it.

A surety, by making a partial payment on the note, had extended its vitality as against himself. After the limitation *upon the note* had attached as to the principal, but within six years from the time of the partial payment, a suit was brought upon the note against the surety for the balance. *Held,* the prin-cipal was inadmissible as a witness for the surety, because of his accounta-bility over to the surety, notwithstanding the statute of limitation.

ON REPORT from *Nisi Prius,* SHEPLEY. C. J. presiding.

ASSUMPSIT on a promissory note for one hundred and twen-ty-five dollars, given in 1837, by Abigail O. Ripley as princi-pal, and the defendant as surety.

In 1842, the defendant paid upon the note $48,74.

The defendant offered the deposition of Mrs. Ripley, the principal in the note. The deposition having been objected to on the ground of interest in the deponent, was excluded.

The defendant then consented to a default, which is to be taken off, if the deposition was admissible.

*Shepley* and *Dana,* for the defendant.

The witness could only be interested, by being liable to de-fendant, in case plaintiff should prevail.

At the time of giving the deposition, the deponent might have pleaded the statute of limitations to an action brought against her upon the note.

Odell *v.* Dana.

The question then is, was she liable to defendant, and if so, how was that liability occasioned?

A surety, by paying a debt to which the statute limitation had attached, could not entitle himself to recover of the principal. He could not stand in a better relation towards his principal than that sustained by the creditor.

Can then a surety *voluntarily* so change that relation as to call upon his principal when that principal is relieved from the creditor, and thus deprive him of a defence, which would otherwise have been available to him?

The case (*Crosby* v. *Wyatt*, 23 Maine, 156,) is widely different from this. There both parties were sureties, and the case turned upon the construction of the *lex loci.*

The two cases differ in principle, as well as in the law applicable thereto. In the case cited, a surety, sued before the statute of limitations would have afforded any defence, and forced to satisfy a judgment, obtained after the statute could have been pleaded, was held entitled to contribution from a co-surety, though the co-surety had made no new promise.

If a surety can, by making a voluntary promise or payment, deprive his principal of a defence otherwise open to him, the intention of our statute is manifestly over-borne, and the surety, having acted *without* necessity or compulsion, is claimed to have acquired all the equitable rights acknowledged in *Crosby* and *Wyatt,* where payment was *coerced.*

By the statute no one of two or more joint contractors shall "be *chargeable,* by reason only of any payment made by any other, or others of them." It is attempted in this suit to make the deponent *chargeable* by reason of the payment by the defendant. If deponent is liable to defendant, she is clearly *chargeable* by reason of his payment in 1842, before the statute had become pleadable; (for a surety could not maintain an action against his principal for money paid on a demand against that principal after the six years had expired.)

In this way the object of the statute is defeated. By allowing such an attempt to succeed, the statute is not only avoided, but the very object of a *caution* is lost, and the principal

subjected to positive hardship; for a case *might* happen, (whether this is one or not,) in which the surety or cautioner becomes such without the knowledge of the principal. Even then the principal would be bound to repay the surety on discharge of the debt by him. (1 Poth. on Obl. part 2, chap. 6, art. 4, sect. 1.) And thus a party having a perfect defence by statute, to an action by the only person he contracted with, is held *liable* to another party who was wholly unknown to him, and with whom he had made no contract whatever. This would seem inequitable, but it is what is contended for by plaintiff.

As long as the deponent is *chargeable* by reason of the promise of another than herself, whether her liability be to the creditor or to the surety, so long she is debarred from all benefit of the statute.

The plaintiff's counsel will contend, that inasmuch as, when the defendant made the new promise in 1842, neither he nor deponent could set up the statute of limitations, the deponent would be holden to repay defendant if within six years from that new promise he should pay the note now in suit ; and, that, as the deposition was given within six years from the date of that new promise, she was then liable to defendant.

It is only necessary to follow out this reasoning to see its absurdity, for if at any time within the six years from 1842, the defendant, instead of payment had made a new promise, it would just as effectually, according to the plaintiff's reasoning, have kept alive both the defendant's and the deponent's liability, as payment within that time would have done ; and if, just before the expiration of six years from this second promise by surety, he should make a third, thereby keeping alive both his and his principal's liability, (as it must do, according to plaintiff's argument,) it is easy to see that the principal would be forever deprived, by these continued acts of another, of all benefit of the statute of limitations whatsoever and be *ever* chargeable by reason of the promise of another than herself.

The great distinction between this case and *Crosby* v.

*Wyatt,* (and others of the same character) seems to be this. There the surety had done nothing to prevent his availing himself of the statute defence, and payment having been *coerced* from him, it was held that he could oblige a co-promissor to contribute towards repaying that which the surety had been forced to advance by virtue of the original contract alone. Here if the surety is held entitled to contribution or repayment, it will not be by reason of the original contract between himself and the witness, but from the added life given to it by the *voluntary* act of the surety himself, *which act alone deprived him of a perfect defence to this suit.*

*A. R. Bradley,* for the plaintiff.

WELLS, J. — The note in suit was signed by Abigail O. Ripley, as principal, and by the defendant as surety. It was given in August, 1837, and in October, 1842, a payment of a part of it was made by the defendant and indorsed upon it. The defendant offered in evidence the deposition of the principal upon the note. If that was inadmissible the default is to stand. The note would be barred by the statute of limitations, if the payment had not been made by the defendant. And the principal by that payment is not deprived of the benefit of the limitation provided by statute, by the terms of which one joint contractor shall not lose the benefits of its provisions by a promise or payment made by another. The liability of the principal then to the plaintiff, is not continued by this act of the defendant, and it does not appear that the plaintiff can maintain any action against her, more than six years having elapsed since she signed the note. But if the defendant can recover against her when he shall have paid the note, she is interested in his favor to defeat the action, and her deposition was properly excluded.

The object of the statute, chap. 146, sect. 20 and 24, was to change the rule of law, so that one of two or more joint contractors could make no payment, promise or acknowledgment, that would have the effect to deprive either of the others of the benefit of the statute, in an action by their creditor. If

the defendant had made the payment after the limitation had attached, or a written promise before or after, thereby charging himself when he would otherwise be discharged, he could have no right to reimbursement for a claim thus voluntarily created. But at that time, he might have been compelled to pay the whole debt, and if the whole, so also a part, and thus he was discharging, not an assumed obligation, but one imposed on him by law. If in so doing, his liability is prolonged, it is the result of the law applicable to the contract, and furnishes no just ground on the part of the principal to object to a repayment. His claim against the principal, when he shall have paid the debt, will arise from paying what he was bound to pay by an obligation founded in the contract, the duration of which was extended by an act, that he could have been coerced to perform.

A different construction of the statute would throw the whole debt upon a joint contractor, who had conducted with the utmost good faith, in making a partial payment, and had done nothing more than his legal duty. And if by successive payments, the liability may be indefinitely extended, one, who has not paid his just proportion of the debt, has no legal or equitable cause of complaint.

In N. H. a payment by one joint debtor does not take a case out of the statute as to another. *Exeter Bank* v. *Sullivan & al.* 6 N. H. 124. Yet in *Peaslee* v. *Breed*, 10 N. H. 489, it was decided, that "where the liability of one joint maker of a promissory note is continued by partial payments within six years, but the remedy of the holder against the other is barred by the statute of limitations; the debtor, who continues liable, may, notwithstanding, recover a contribution from the other, when he has paid the debt." And it is said by PARKER, C. J., "On the facts in this case, the liability of Peaslee was at all times continued, and the case, as to him, taken out of the operation of the statute of limitations; not by any new agreement, or assent to any new agreement, not contemplated by the original contract; but by a part performance of what was stipulated in the original contract itself. The

defendant, therefore, cannot object that Peaslee paid wrong-fully, or that the payment does not come within the implied promise to contribute."

The principal is bound by an implied promise, to indemnify the defendant for whatever he may be holden to pay in this action, and is therefore directly interested.

According to the agreement of the parties, the default is to remain, and the defendant to be heard in damages.

Note. — Howard, J., having been of counsel, did not act in the decision of this case.